UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 14-23208-CIV-LENARD/GOODMAN

FLAVA WORKS, INC.,

     Plaintiff,

v.

A4A RESEAU, INC., *et al.*,

     Defendants.

_____/

**REPORT AND RECOMMENDATIONS ON DEFENDANTS'
AMENDED MOTION FOR ORDER OF SEIZURE AND SALE**

The Court entered a judgment for $81,958.72 in attorney's fees, costs, and post-judgment interest against Plaintiff Flava Works, Inc. [ECF No. 167]. On December 7, 2018, the Clerk issued a Writ of Execution in the amount of $81,958.72. [ECF No. 173]. Defendants filed a Motion for Proceedings Supplementary and to Implead Phillip Bleicher pursuant to Section 56.29, Florida Statutes.[1] [ECF No. 174]. United States District Judge Joan A. Lenard granted the motion by default and on the merits, finding that the jurisdictional prerequisites were met to initiate proceedings supplementary under

---

[1]    Pursuant to Federal Rule of Civil Procedure 69(a)(1), "[t]he procedure on execution -- and in proceedings supplementary to and in aid of judgment or execution -- must accord with the procedure of the state where the court is located . . ." Fed. R. Civ. P. 69(a)(1). Section 56.29, Florida Statutes sets forth the procedures for proceedings supplementary.

Section 56.29, Florida Statutes, and to implead third-party Phillip Bleicher. [ECF No. 190, pp. 5-6]. Judge Lenard referred this matter to the Undersigned "to issue a Notice to Appear . . . and to conduct all further proceedings supplementary in aid of execution." *Id*. at p. 7.

On June 26, 2019, Defendants then filed a Motion for Order of Seizure and Sale. [ECF No. 191]. The Undersigned denied this motion without prejudice because "the required Notice to Appear [had] not been served and the motion lack[ed] the necessary factual support to support judgment in Defendants' favor." [ECF No. 193]. In response, Defendants filed Proposed Notices to Appear [ECF No. 194] which were endorsed by the Undersigned with respect to Phillip Bleicher and Flava Works, Inc.[2] [ECF Nos. 196-197].

The Notices to Appear required Plaintiff to submit responsive affidavits and legal defenses to Defendants' attorney, John F. Bradley, by November 12, 2020 and to file the original affidavit with the Clerk of Courts. [ECF Nos. 196-197]. Defendants filed a notice of compliance and service upon Flava Works, Inc. and Phillip Bleicher the same day the

---

[2]    The basis to interplead Phillip Bleicher was granted, in part, on the argument that he is an "alter ego" of Flava Works, Inc. [ECF No. 190, pp. 5-6]. Because of this and for administrative and judicial convenience, the Undersigned will refer to Phillip Bleicher and Flava Works, Inc., collectively, as "Plaintiff" unless necessary to distinguish the person and the corporation for purposes of factual findings or legal determinations. The Undersigned will also use the pronouns "he," "his," or "him" when discussing Plaintiff.

2

Notices were endorsed by the Undersigned. [ECF No. 198]. The response date elapsed and Plaintiff did not file an affidavit or memorandum of law.

Five days after expiration of the deadline to respond to the Notice to Appear, Plaintiff filed a request for an extension of time to respond to the Notice to Appear. [ECF No. 200]. The Undersigned granted Plaintiff's request and allowed Plaintiff two weeks to retain counsel and an additional week after retaining counsel to respond to the Notices to Appear. [ECF No. 201]. Plaintiff obtained counsel on the date of the first deadline.[3] [ECF No. 204]. Plaintiff also filed a non-responsive affidavit as part of counsel's notice of appearance and as a separate pleading. [ECF Nos. 204, 207].

The Notices to Appear endorsed by the Undersigned required Plaintiff to provide an affidavit "stating why the property, debt, and/or other obligation should not be applied to satisfy the judgment . . . [including] any fact or legal defense opposing the application of the property . . . ." [ECF No. 196-197, p.2]. Plaintiff's affidavit, instead, complained of excessive attorney's fees,[4] highlighted fees Plaintiff spent on multiple

---

[3]     While counsel's notice to appear was not filed on CM/ECF until after the deadline, a signed affidavit by counsel indicated that Plaintiff obtained his services on the date of the first deadline and the delay in filing was due to counsel's need to receive CM/ECF credentials to upload his notice. [ECF No. 206].

[4]     Plaintiff's affidavit requested the Defendant to provide detailed billing entries. These documents had already been provided to Plaintiff and the "redaction" issue had already been raised. [ECF No. 165]. Notably, the Court, in calculating the damages which the Plaintiff continued to complain about in his affidavit, noted that Defendants did not

counsel, and requested mediation due to the parties' inability to settle. [ECF No. 205, Ex. 1; ECF No. 207].

In the interim between Plaintiff's retention of counsel and counsel filing a notice of appearance (after the deadline set by the Notices to Appear), Defendants filed an Amended Motion for Order of Seizure and Sale. [ECF No. 203]. Within two months of the filing of Defendants' Amended Motion, and without filing any type of response to Defendants' Amended Motion, Plaintiff's counsel filed a Motion to Withdraw as Attorney for Plaintiff. [ECF No. 208]. Defendants filed a response in opposition to this motion. [ECF No. 210].

On April 20, 2021, the Undersigned granted Plaintiff's counsel's Motion to Withdraw. [ECF No. 212]. As part of the order, counsel was required to serve Plaintiff a copy of the paperless Order on Phillip Bleicher and Flava Works, Inc. *Id*. The Order, in addition to granting counsel's motion to withdraw, required Plaintiff to retain new counsel by May 4, 2021, and to file a response to Defendants' Amended Motion for Order of Seizure and Sale by May 18, 2021. *Id*.

The Order also cautioned Plaintiff that failure to secure counsel and participate in the action would result in the Undersigned awarding the Defendants' requests (assuming

_____

include redated entries in their fee request, and the Court awarded fees based only on un-redacted entries. [ECF No. 167].

4

Defendants met the requisite factual showing). *Id*. Plaintiff's former counsel filed an affidavit of compliance with this order on April 28, 2021, indicating that Plaintiff had been emailed a copy of the order on April 20, 2021 and received the order via United States Parcel Service on April 24, 2021. [ECF No. 213]. To this date, Plaintiff has not procured counsel nor filed a response by either of the deadlines set by the Court.

For the reasons outlined below, the Undersigned **respectfully recommends** that the District Court Judge grant Defendants' motion to allow for the seizure and sale of Plaintiffs' intellectual property to satisfy the outstanding Judgment.

## I.      Background

The background of the case and pending motion is delineated above, but Plaintiff's lack of counsel merits additional discussion.

At the time of this Report and Recommendations, Plaintiff is currently unrepresented. This, however, is a result of the Plaintiff's own actions. Since first filing a complaint on August 29, 2014, Plaintiff has retained no fewer than six different attorneys. This is despite the fact the Complaint was voluntarily dismissed on January 21, 2015. As Defendants have sought to obtain attorney's fees related to the case, this Court has granted Plaintiff an extension to hire counsel on 02/25/15, [ECF No. 26] 04/10/19, [ECF No. 183] 11/19/20, [ECF No. 201] and 04/20/21 [ECF No. 212].

Even when Plaintiff has had counsel, he has requested numerous extensions, missed multiple deadlines, and continued to relitigate — in this Court — previously-resolved issues. Plaintiff has done this even though he is aware of his appellate remedies, as demonstrated by his fielding of a notice of appeal on 10/22/18 [ECF No. 168], which was dismissed on 11/27/18 for lack of prosecution. [ECF No. 170]. Plaintiff then reinstated this appeal on 12/31/18 [ECF No. 176], but it was again dismissed for lack of prosecution on 05/21/19.[5] [ECF No. 186].

Most recently, Plaintiff was required to obtain counsel by May 4, 2021 and to file a response to Defendants' motion by May 18, 2021. [ECF No. 212]. He has done neither. Defendants' motion was filed on December 8, 2020 and, in more than six months, Plaintiff has failed to provide any response to the legal or factual merits of Defendants' motion.

## II.    Legal Standard

Under Rule 69(a)(1), "[t]he procedure on execution — and in proceedings supplementary to and in aid of judgment or execution — must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1). Section 56.29, Florida Statutes, provides that once a party has made an initial showing that the prerequisites of proceedings supplementary are met,

---

[5]    This time, the Eleventh Circuit Court of Appeals dismissed the appeal because Plaintiff failed to retain counsel within the time fixed by the rules.

like here, then a Notice to Appear must be served on the judgment debtor. *See* Fla. Stat. §

56.29(2); *see also Floridians for Solar Choice, Inc. v. PCI Consultants, Inc.*, No. 15-CV-62688,

2019 WL 2297524, at *2 (S.D. Fla. May 30, 2019) ("Compliance with these prerequisites

provides the predicate for issuing Notices to Appear and impleading any named third

parties to supplementary proceedings.").

    Specifically, Section 56.29(2) provides:

> Upon filing of the motion and affidavits that property of the judgment debtor, or any debt, or other obligation due to the judgment debtor in the custody or control of any other person may be applied to satisfy the judgment, then the court shall issue a Notice to Appear. The Notice to Appear shall direct such person to file an affidavit, as provided in s. 56.16, with the court by a date certain, which date shall not be less than 7 business days from the date of service of the Notice to Appear, stating why the property, debt, or other obligation should not be applied to satisfy the judgment. . . . The Notice to Appear must describe with reasonable particularity the property, debt, or other obligation that may be available to satisfy the judgment, must provide such person with the opportunity to present defenses, and must indicate that discovery as provided under the rules of civil procedure is available and that there is a right to a jury trial as provided in s. 56.18. The Notice to Appear must be served as provided for in chapter 48. A responding affidavit must raise any fact or defense opposing application of the property described in the Notice to Appear to satisfy the judgment, including legal defenses, such as lack of personal jurisdiction. Legal defenses need not be filed under oath but must be served contemporaneously with the affidavit.

Fla. Stat. § 56.29(2).

    "The statute is equitable in nature and should be interpreted liberally to ensure

that 'a judgment creditor [receives] the most complete relief possible . . . without the

necessity of initiating a separate action.'" *Cuba Cigar Brands, N.V. v. Tabacalera Popular Cubana, Inc.*, 2008 WL 4279641, at *2 (S.D. Fla. 2008) (quoting *MCI Telecomms Corp. v. O'Brien Marketing*, 913 F.Supp. 1536, 1539 (S.D. Fla. 1995). Further, the court is empowered to "enter any orders, judgments, or writs required to carry out the purpose of this section, including those orders necessary or proper to subject property or property rights of any judgment debtor to execution . . . ." Fla. Stat. § 56.29(6).

When addressing pending motions, Local Rule 7.1 (c) allows the court to consider a party's failure to file a response or opposing memorandum as sufficient cause to grant the underlying motion *by default*. S.D. Fla. L.R. 7.1(c).

### III.    Analysis

Once a party has made an initial showing that the prerequisites for proceedings supplementary are met, like here, then a Notice to Appear must be served on the judgment debtor. *See* Fla. Stat. § 56.29(2). A Notice to Appear must inform the subject that the subject shall file an affidavit by a date specified stating why the property, debt, or other obligation should not be applied to satisfy the judgments; it must describe, with sufficient particularity, the sought property; it must provide the person with the opportunity to present legal defenses; it must indicate there is a right to discovery; and it must indicate there is a right to a jury trial. *Id*. The Notices to Appear issued to Phillip Bleicher and Flava Works, Inc. complied with these requirements. [ECF Nos. 196-197].

A Notice to Appear must be served pursuant to the provisions of Chapter 48 of Florida Statutes. *See* Fla. Stat. § 56.29(2). Specifically, Section 48.194, Florida Statutes, provides the criteria for a personal service outside state and states "[a] court may consider the return-of-service form described in s. 48.21, *or any other competent evidence*, in determining whether service has been properly made." Fla. Stat. § 48.194(1) (emphasis added).

The "Notice of Complaince [sic] and Service of Notices to Appear" indicates that Defendants complied with the Court's order to serve the notices on Phillip Bleicher and Flava Works, Inc.[6] [ECF No. 198]. After the Defendants' filing, in an affidavit filed by Flava Works, Inc *and signed by Phillip Bleicher*, he indicates he received the notice, albeit in an allegedly "unreadable condition," on October 23, 2020. [ECF No. 200]. Plaintiff requested an extension of time to respond. *Id.* After receiving an extension of time, Plaintiff filed a sworn affidavit "to comply with the Court's Notice to Appear dated October 22, 2020." [ECF Nos. 204 Ex. 1; 207].

Flava Works, Inc. is a corporation. Process against a corporation may be served "[o]n the president or vice president, or other head of the corporation." § 48.081(1)(a). Phillip Bleicher, in front of the Undersigned, has held himself out as "the CEO of Flava

---

[6]     The notice, however, is devoid of any information as to how service was effectuated on Flava Works, Inc. or Phillip Bleicher.

Works." [ECF No. 123]. Further, Flava Works, Inc. has previously filed motions "by and through its Owner and CEO, Phillip Bleicher . . . ." [ECF Nos. 25; 184]. This Court has also already made a finding that Phillip Bleicher is the "alter ego" of Flava Works, Inc. It is indisputable that Phillip Bleicher qualifies as a "head of the corporation."

The Undersigned believes Flava Works, Inc. and Phillip Bleicher, based on all the record evidence, were properly served.

Plaintiff also did not raise a service or jurisdiction-based objection in his affidavit. This precludes him from claiming these defenses now or in the future. The "Florida Rule governing defenses [Fla. R. Civ. P. 1.140(b)] is patterned after rule 12(b) of the Federal Rules of Civil Procedure and [] '[t]he import of our rules is to a like effect.'" *Babcock v. Whatmore*, 707 So. 2d 702, 704 (Fla. 1998) (quoting *State ex rel. Eli Lilly & Co. v. Shields*, 83 So. 2d 271, 272 (Fla. 1955).

When dealing with defenses under the Federal Rules, after which the Florida Rules are patterned, a party consents to jurisdiction and waives service objections by failing to object in the answer and by participating in the proceedings. Fed. R. Civ. P. 12(h)(1)(A)-(B) ("A party waives any defense listed in Rule 12(b)(2)-(5) by: (A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or (B) failing to either: (i) make it by motion under this rule; or (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course."); *See also e.g., Hemispherx Biopharma, Inc.*

*v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1360 (11th Cir. 2008) ("Under Rule 12, a defendant must raise any challenge to the sufficiency of service of process in the first response to the plaintiff's complaint; i.e., the defendant must include the defense in either its pre-answer motion to dismiss, or if no pre-answer motion is filed, then the defense must be included in the defendant's answer."); *Bailey, Hunt, Jones & Busto v. Scutieri*, 759 So. 2d 706 (Fla. 3d DCA 2000) (holding that defendant who files any pleading as to merits in a case waives all challenges to service of process or jurisdiction); *Martin v. Ullman*, 555 So. 2d 1232 (Fla. 3d DCA 1989), rev. den., 564 So. 2d 487 (Fla. 1990) (holding that appellant's service of process and jurisdictional challenge was without merit where he actively participated in proceedings, including a presentation of testimonial evidence).

Further, Section 56.29(2), Florida Statutes, shares similar language with Rule 12 and requires that "[a] responding affidavit must raise any fact or defense opposing application of the property described in the Notice to Appear to satisfy the judgment, including legal defenses, such as lack of personal jurisdiction." Fla. Stat. § 56.29(2).

Even if the Undersigned were unconvinced by the evidence demonstrating service, by filing an affidavit devoid of a service objection and by actively, albeit briefly, participating in the litigation, Plaintiff has waived the right to object to Defendants' motion on the basis of insufficient service.

Plaintiff's affidavit fails to allege any *pertinent* factual or legal dispute with the validly issued Notices to Appear. Plaintiff, instead, avers he "understand[s], accept[s], and respect[s] the underlying ruling [issuing a judgment of $81,952.72 and a writ of execution for intellectual property to satisfy the judgment] by the Court." [ECF Nos. 204, Ex. 1; 207]. Plaintiff's additional statements, however, merit further discussion.

Plaintiff claims he stopped receiving notices of filing in the case and was unaware the case was moving forward because his attorney had misled him into believing she was handling the case when she was actually petitioning the court to withdraw. *Id*. This claim is inconsistent with the docket entries and Plaintiff's own filings.

For example, Plaintiff filed a motion for extension of time to hire new counsel on April 8, 2019, indicating he had terminated his prior attorney that morning.[7] [ECF No. 181]. Plaintiff's motion was granted [ECF No. 183], and Plaintiff filed an additional request for an extension. [ECF No. 184]. Despite filing these requests to locate a replacement for counsel — whose employment he terminated — more than a year passed before Plaintiff began participating in the litigation again. [ECF No. 200].

The crux of Plaintiff's affidavit relates to claims regarding the amount of fees awarded to Defendants. Plaintiff first asserts that the judgment is excessive, and that he

---

[7]     The Exhibit included with Plaintiff's submission is for *Flava Works, Inc. v. A4A Reseau, Inc., et al.*, 15-cv-20245-MGC, which, other than sharing the same parties, bears no relation to this case.

has not received a "clear disclosure of timesheets," "just heavily redacted documents." [ECF Nos. 204, Ex. 1; 207]. This argument has already been addressed by Judge Lenard in the Order awarding Defendants attorney's fees. [ECF No. 167]. The Order addressed the reasonableness of the fees, the accuracy of the provided timesheets, as well as the redacted entries. *Id.* Specifically, the Order stated that Defendants were not seeking awards for any of the redacted entries and the Court was not awarding any fees for the redacted entries. *Id.*

Plaintiff also contradicts the earlier statement in his affidavit accepting and respecting the Court's judgment. Plaintiff also claims to have spent $35,000 on counsel fighting these fee awards. [ECF Nos. 204, Ex. 1; 207]. This is not a relevant statement at this stage of proceedings, and Plaintiff should have raised the issue previously by objecting to Defendants' attorneys' hourly rates. [ECF No. 167, p. 10]. Lastly, Plaintiff claims Defendants will not negotiate with him. The Undersigned has already informed Plaintiff that the Court cannot force Defendants to engage in settlement discussions or accept a payment plan. [ECF No. 123, p. 18].

Because Plaintiff has failed to address the veracity of the allegations within the Notice to Appear and sought only to relitigate ancillary, previously-decided issues, the Undersigned views Defendants' allegations as admitted by Plaintiff. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir.2009) ("A defendant,

by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.") (internal quotation marks omitted); *see also Seaman v. Dokimos*, 2007 WL 9701092, at *8 (S.D. Fla. 2007) (In the context of a default, "it is only necessary that the defendant raise justiciable issues for decision which are not totally frivolous or bare allegations without foundation which if provided would entitle the defaulting party to partial relief.") (internal citations omitted).

The Undersigned previously indicated that Defendants' earlier motion did not meet the requisite factual showing because it merely provided a list of various items of intellectual property alleged to belong to Flava Works, without including any of the copyright registrations or other appropriate documentation. [ECF No. 193]. In the present motion, however, Defendants have cured this issue and provided a list of intellectual property which can be broken down into five categories: 1) Copyrights known to belong to Plaintiff because they were included in Plaintiff's initial complaint; 2) Copyrights known to belong to Plaintiff because they were provided by Plaintiff in discovery; 3) Copyrights known to belong to Plaintiff because of defense counsel's research and accompanying registrations; 4) Trademarks known to belong to Plaintiff because of defense counsel's research and the accompanying registrations; and 5) Internet domain names known to belong to Plaintiff because of defense counsel's research.

14

Defendants have met their burden for the majority — but not all of — the requested intellectual property.

There is sufficient basis to believe the following copyrights belong to Plaintiff because Plaintiff included them in the initial complaint [ECF No. 1, Ex. 2]:

PA0001668012[8], VA0001861558[9], and VA0001861561.[10]

There is sufficient basis to believe the following copyrights belong to Flava Works, Inc. because Flava Works, Inc. provided them to Defendants in discovery [ECF 203, Ex 2]:

PA0001788831, PA0001802985, PA0001668277, PA0001737150, PA0001803007, PA0001668240, PA0001668343, PA0001666879, PA0001666861, PA0001666875, PA0001697763, PA0001668262, PA0001668012, PA0001691638, PA0001737154, PA0001668231, PA0001687480, PA0001789154[11], PA0001668011, PA0001789151[12], PA0001737157, PA0001737156, PA0001668266, PA0001668271, PA0001728043,

---

[8]   This is also entry 92 in Defendants' list of copyrights obtained via reviewing www.copyright.gov from a search of "Flava Works."

[9]   This is also entry 23 in Defendants' list of copyrights obtained via reviewing www.copyright.gov from a search of "Flava Works."

[10]   This is also entry 63 in Defendants' list of copyrights obtained via reviewing www.copyright.gov from a search of "Flava Works."

[11]   Defendants included a certificate of registration for this copyright twice.

[12]   Defendants included a certificate of registration for this copyright twice.

PA0001728038,      PA0001691644,      PA0001691631,      PA0001737152,      PA0001668265,

PA0001668232,      PA0001691647,      PA0001802981,      PA0001668235,      PA0001737151,

PA0001802983,      PA0001691645,      PA0001782056,      PA0001737153,      PA0001668238,

PA0001701364,      PA0001737149,      PA0001668278,      PA0001804964,      PA0001797171,

PA0001861008,      PA0001841887,      PA0001294212,      PA0001294214,      PA0001294217,

PA0001668281,      PA0001748151,      PA0001804962,      PA0001841878,      PA0001295163,

PA0001298415,      PA0001298397,      PA0001862670,      PA0001298401,      PA0001298403,

PA0001635777, PA0001635734, PA0001764960, and PA0001635732

There is sufficient basis to believe the following copyrights belong to Flava Works, Inc. because Flava Works, Inc. is listed as the owner when a search of www.copyright.gov was conducted using the search term "Flava Works" [ECF No 203, Ex. 2]:

CSN0148498,     CSN0148498,     PA0001315877,     PA0001315909,     PA0001316802,

PA0001635768,      PA0001635771,      PA0001635772,      PA0001635774,      PA0001635916,

PA0001635924,      PA0001668236,      PA0001677123,      PA0001677124,      PA0001736926,

PA0001737155,      PA0001748139,      PA0001748142,      PA0001748147,      PA0001748148,

PA0001748153,      PA0001748155,      PA0001748166,      PA0001764940,      PA0001764942,

PA0001764946,      PA0001764949,      PA0001764951,      PA0001764959,      PA0001769140,

PA0001772428,      PA0001779324,      PA0001779325,      PA0001788830,      PA0001789152,

PA0001789153,      PA0001789156,      PA0001789158,      PA0001789159,      PA0001797213,

PA0001797237,    PA0001797238,    PA0001797241,    PA0001802909,    PA0001802911,

PA0001802967,    PA0001803004,    PA0001804963,    PA0001804965,    PA0001820337,

PA0001822515,    PA0001822516,    PA0001822522,    PA0001828190,    PA0001830766,

PA0001832507,    PA0001841874,    PA0001841880,    PA0001841884,    PA0001841889,

PA0001841890,    PA0001841894,    PA0001861001,    PA0001861002,    PA0001861010,

PA0001863010,    PA0001863016,    PA0001863017,    PA0001917773,    PA0001917774,

PA0001917804,    PA0001917810,    PA0001917812,    PA0001917813,    PA0001917815,

PA0001917818,    PA0001993082,    PA0001993086,    PA0002025838,    PA0002025846,

PA0002025848,    PA0002025855,    PA0002025857,    PA0002025860,    PA0002036969,

PA0002036970,    PA0002036972,    PA0002036987,    PA0002037042,    PA0002037043,

PA0002037046,    PA0002037047,    PA0002037052,    PA0002037054,    PA0002037056,

PA0002037057,    PA0002037058,    PA0002037060,    TX0007145771,    TX0007145774,

TX0007145778,    TX0007145781,    TX0007180442,    TX0007220990,    TX0007220991,

TX0007319942,    TX0007319946,    TX0007319950,    TX0007319952,    TX0007319954,

TX0007319957,    TX0007319958,    TX0007319960,    TX0007319961,    TX0007319965,

TX0007323094,    TX0007527909,    TX0007527910,    TX0007527914,    TX0007527917,

TX0007527918,    TX0007527920,    TX0007527922,    TX0007527923,    VA0001742514,

VA0001760400,    VA0001792407,    VA0001837588,    VA0001837591,    VA0001861558,

VA0001861560, and VA0001861561.

17

There is sufficient basis to believe the following copyrights belong to impleaded third party Phillip Bleicher because Phillip Bleicher is listed as the owner when a search of www.copyright.gov is conducted using the search term "Phillip Bleicher" [ECF No. 203, Ex. 2]:

VA0001861558, VAu001410418, and VA0001742514

The next set of intellectual property Defendants seek to have seized is a series of trademarks. The United States Patent and Trademark Office (PTO) is responsible for "the registration of trademarks" and "shall be responsible for disseminating to the public information with respect to patents and trademarks." 35 U.S.C. § 2(a)(1)-(2).

Defendants provide a list of trademarks purportedly attributable to Flava Works, Inc. A review of these trademarks, however, reveals that many of them are labeled as "dead," "cancelled," or a combination of the two. These two terms have definitions in the context of trademarks. The PTO has stated that

> a dead or abandoned status for a trademark application means that specific application is no longer under prosecution within the USPTO, and would not be used as a bar against your filing. It does not necessarily mean that there are not other marks that the trademark examining attorney would cite. It is also possible to revive an abandoned application (for example, if the USPTO declared the application abandoned for failure of the applicant to respond to an Office action, but the applicant later proved that a response was sent and the USPTO simply failed to match it with the file in a timely manner, then the case could be revived). Also, regardless of the status of an application within the USPTO, the owner may still claim common law rights, i.e, the mark may still be in use in commerce.

*Glossary*, United States Patent and Trademark Office, https://www.uspto.gov/learning-and-resources/glossary (last visited June 09, 2021).

Similarly, the PTO states that canceled[13] means the "trademark registration is no longer active. It may be due to the registrant's failure to file the required continued use affidavit under Section 8 of the Trademark Act, to a cancellation proceeding at the Trademark Trial and Appeal Board or to the outcome of a civil court action." *Id.*

Because it is unclear whether Flava Works, Inc. still maintains any possessory rights in the trademarks that have been labeled "dead" or "cancelled" and the Undersigned has no evidence of Flava Works Inc.'s continued use, allowing for common law rights to attach, those trademarks should not be subject to seizure.

There is, however, sufficient basis to believe the following trademarks belong to Flava Works, Inc. because Flava Works, Inc. is listed as the owner when a search of the United States Patent and Trademark Office website is conducted using the search term "Flava Works" [ECF No. 203, Ex. 2]: "COCOSTORE" trademark and U.S. Registration

---

[13] The PTO uses, interchangeably, the words "canceled" and "cancelled." Both spellings are considered correct. *'Canceled' or Cancelled"? There's no need for a rain check*, Merriam-Webster, https://www.merriam-webster.com/words-at-play/canceled-or-cancelled (last visited 06/09/21) ("While both canceled and cancelled are acceptable for the past tense of cancel, the version with one L is more common in American English, while the version with two L's is more common in British English.")

No. 4708268 issued by the PTO on March 24, 2015 and "COCODORM" trademark and U.S. Registration No. 4726745 issued by the PTO on April 28, 2015.

There is insufficient information to convince the Undersigned that the requested domain names belong to Plaintiff. While the Undersigned could make the leap and assume "FlavaIP" is associated with Flava Works, Inc. or Phillip Bleicher, it would be a leap based on assumption and not testimonial or documentary evidence.

There is no legal justification preventing the seizure of the Plaintiff's intellectual property. Intellectual property,[14] like physical property, is subject to seizure and execution via proceedings supplementary. *See Continental Cigar Corp. v. Edelman & Co., Inc.*, 397 So. 2d 957 (Fla. 3rd DCA 1981) (affirming that trademarks and logos are amenable to execution); *Cuba Cigar Brands, N.V. v. Tabacalera Popular Cubana, Inc.*, 2008 WL 4279641 (S.D. Fla. 2008) (ordering seizure of debtor's registered trademarks in proceedings supplementary under Section 56.29, Florida Statutes).

The Court is afforded broad leeway to enter orders to carry out the purpose of proceedings supplementary. Fla. Stat. § 56.29 ("The court may enter any orders,

---

[14]   Intellectual property (1808) 1. A category of intangible rights protecting commercially valuable products of the human intellect. • The category comprises primarily trademark, copyright, and patent rights, but also includes trade-secret rights, publicity rights, moral rights, and rights against unfair competition. 2. A commercially valuable product of the human intellect, in a concrete or abstract form, such as a copyrightable work, a protectable trademark, a patentable invention, or a trade secret. INTELLECTUAL PROPERTY, Black's Law Dictionary (11th ed. 2019)

judgments, or writs required to carry out the purpose of this section, including those orders necessary or proper to subject property or property rights of any judgment debtor to execution . . . ."). In situations such as this, where Plaintiff has shown extreme disregard for the court's orders, there are multiple legal bases upon which the Undersigned may rely to recommend that Defendants' motion be granted.

Long-standing Florida precedent requires that proceedings supplementary "be given a liberal construction so as to afford to the judgment creditor the most complete relief possible." *Richard v. McNair*, 121 Fla. 733, 743 (Fla. 1935). If the debtor party fails to answer within the time required, and the court is satisfied from the evidence presented that the property is subject to execution, it may enter a default against the debtor party and order the property be sold to satisfy the judgment. *See Richard v. McNair*, 121 Fla. 733, 746 (Fla. 1935). Here, while Plaintiff filed an affidavit, he utterly failed to respond to the *substance* of Defendants' motion despite numerous court orders requiring him to do so.

The Local Rules also provide a basis for the Court to grant Defendants' motion. Specifically, according to Local Rule 7.1 (c), failure to file a response "may be deemed sufficient cause for granting the motion by *default*." S.D. Fla. L.R. 7.1(c) (emphasis supplied). The Court is permitted to review the case history to satisfy itself that a party is sufficiently aware of the Local Rules. *Arrington v. Hausman*, 2016 WL 782416, at *2 (S.D. Fla. 2016).

Here, Plaintiff has been warned by the Undersigned on multiple occasions that there are consequences for failing to timely file a response. [ECF No. 212]. ("If Plaintiff fails to secure counsel and fails to participate in this action, then it is warned that the Undersigned will award Defendants' request to seize and sell Plaintiff's intellectual property (assuming the requisite factual showing is made by Defendants)."); [ECF No. 193, p.6]. ("If Plaintiff fails to secure counsel and fails to participate in this action, then it is warned that the Undersigned will award Defendants' request to seize and sell Plaintiff's intellectual property (assuming the requisite factual showing is made by Defendants).").

Moreover, Plaintiff has, in fact, previously had a default entered against it for failing to properly participate in the litigation. [ECF No. 190]. Given the number of cautionary orders provided to Plaintiff, the Court would be remiss not to follow through with its warnings.

Alternatively, Defendants' motion should also be granted on its merits. Plaintiff, through default, admits the factual allegations of Defendants' motion. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) ("A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.") (internal quotation marks omitted). The well-pleaded allegations of Defendants' motion demonstrate there is an outstanding judgment owed by Plaintiff and

that Plaintiff is the owner of much of the intellectual property at issue. As detailed at length above, Defendants included comprehensive evidentiary exhibits explaining and identifying the specific intellectual property owned by Plaintiff.

Litigants can be penalized for failing to participate in proceedings. *See Coupling Solutions, LLC v. Davidson*, 2012 WL 12868743 (S.D. Fla. 2012) (striking a defendant's pleading and granting plaintiff's motion for default due to defendant's failure to appear for court-ordered mediation.)

> Federal courts have the inherent power to impose sanctions on parties. *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006). "This power is derived from the court's need to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Id*. (internal quotation omitted). The key to unlocking a court's inherent power is a finding of bad faith. *Id*. "A party . . . demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Id*. (citation omitted).

*Id*.

The Order initially awarding fees was entered more than two years ago. [ECF No. 153]. Plaintiff has spent the past two years claiming to be in search of counsel, attempting to relitigate previously-decided issues, and ignoring court orders and deadlines. Granting Defendants' motion without a response by Plaintiff is justified by Florida law, the Local Rules, and the merits of Defendants' request.

The Undersigned previously directed Defendants to provide legal support justifying their suggestion that the seized property can be sold by a trustee. [ECF No. 193,

fn. 2]. Rather than provide any legal authority, Defendants instead state they have "no objection" to the Court appointing a Federal Marshal. [ECF No. 203]. Rule 69(a) requires the Court to abide by the procedures of the state where it is located, "but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a).

Section 566 of the United States Code, Title 28, states that "[e]xcept as otherwise provided by law or Rule of Procedure, the United States Marshals Service shall execute all lawful writs, process, and orders issued under the authority of the United States . . . ." 28 U.S.C. § 566(c). The Eleventh Circuit, applying these principles, concluded that "under Rule 69(a) and § 566(c), *only* a U.S. marshal may execute the federal writ of execution by levying on and selling Defendants' property." *Branch Banking & Tr. Co. v. Ramsey*, 559 F. App'x 919, 924 (11th Cir. 2014) (emphasis added).

Moreover, the typical practice in this jurisdiction is for a U.S. Marshal to seize the subject property for sale at a judicial auction. *See, e.g.*, *Inversiones y Procedsaro Tropical Inprotsa, S.A. v. Del Monte Intern. GmhH*, 2019 WL 2253953 (S.D. Fla. March 18, 2019); *Mystique, Inc. v. 138 Intern., Inc.*, 2010 WL 3008809 (S.D. Fla. July 28, 2010); *Cuban Cigar Brands, N.V., v. Tabacalera Popular Cubana, Inc.*, 2008 WL 4279641 (S.D. Fla. Sept. 16, 2008). There is no reason to deviate from this jurisdiction's standard practice or the applicable law. The U.S. Marshal is fully capable of seizing and selling intellectual property.

24

Defendants also seek an award of costs and fees associated with the efforts taken in executing this judgment via proceedings supplementary. Defendants directed the Court's attention to Florida Statute Section 56.29(8), which allows for costs of the proceedings supplementary to be taxed against the judgment debtor. These costs include, but are not limited to, docketing the execution, sheriff's service fees, court reporter's fees, and reasonable attorney fees.

The Undersigned, as I have done in the previous report and recommendations [ECF No. 148], is going to reach the merits of Defendants' request via, in part, Florida Statute Section 57.115,[15] which states, in relevant part: "The Court may award against a judgment debtor reasonable costs and attorney's fees incurred thereafter by a judgment creditor in connection with execution on a judgment." Fla. Stat. § 57.115(1).

In determining whether to award attorney's fees, courts shall consider (1)"whether the judgment debtor had attempted to avoid or evade the payment of the judgment" and (2) "other factors as may be appropriate in determining the value of the services provided or the necessity for incurring costs in connection with the execution." Fla. Stat. §§ 57.115(2), (3).

---

[15]     "It is well-settled that attorney's fees can derive only from either a statutory basis or an agreement between the parties." *Florida Hurricane Protection and Awning, Inc. v. Pastina*, 43 So. 3d 893, 895 (Fla. 4th DCA 2010). However, the specific statutory or contractual basis of a claim for attorney's fees need not be pleaded. *Caufield v. Cantele*, 837 So. 2d 371, 377-78 (Fla. 2002).

As stated above, Plaintiff has gone to great lengths to avoid paying the court-ordered judgment and to delay these proceedings. Plaintiff has repeatedly missed court-ordered deadlines and attempted to relitigate previously-decided issues. Defendants, on the other hand, have been diligent in litigating this issue. The actions of both parties weigh in favor of awarding Defendants the attorney's fees that were expended during the proceedings supplementary.

The language of Section 59.29(8), however, controls the assessment of costs in proceedings supplementary, including, but not limited to, docketing the execution, sheriff's service fees, and court reporter's fees. Fla. Stat. § 59.29(8) ("Costs for proceedings supplementary shall be taxed against the judgment debtor . . . .") The use of the word "shall" relieves this Court of discretion and requires those costs to be assessed against the judgment debtor. *Id*.

However, neither the attorney's fees nor the costs may be taxed against Phillip Bleicher as an impleaded third party. "[I]mpleaded parties are not liable for attorney's fees and costs in . . . proceedings supplementary. In such proceedings, attorney's fees and costs may be awarded only against the original judgment debtor — not against any impleaded parties." *Destination Boat Clubs, Inc. v. Island Breeze Boat Club & Rental Inc.*, 226 So. 3d 301, 303 (Fla. 2d DCA 2017) (alterations in original) (quoting *Kingston Corp. Grp. of Fla. v. Richard Kleiber Walter Kleiber P'ship*, 127 So. 3d 802, 804 (Fla. 2d DCA 2013).

As a result, the Undersigned **respectfully recommends** that the District Court grant Defendants' motion for seizure and sale and direct the U.S. Marshal to seize the intellectual property described in this report and recommendations. The U.S. Marshal should then sell the aforementioned intellectual property at a judicial auction to be applied to Defendants' September 9, 2018 Final Judgment.

Furthermore, the Undersigned **respectfully recommends** that the District Court conclude that Defendants are entitled to attorney's fees and costs under Sections 57.115 and 59.29(8) because all collection efforts have been rendered in direct connection to Defendants' execution on their Judgment.

The Undersigned also **recommends** that**,** if attorney's fees and costs are awarded and Defendants seek to use the proceeds from the sale of the intellectual property to satisfy the judgment, then only the intellectual property belonging to Flava Works, Inc. be used.

The Undersigned also **respectfully recommends** that the District Court require the parties to meet and confer in person, on or before 30 days from entry of an Order approving and ratifying this Report and Recommendations, to resolve the amount of post-judgment fees, costs, and interest due. If the parties cannot agree, then Defendants shall have 30 additional days to submit affidavits and supporting documentation to support their request for post-judgment fees and costs.

27

**IV.    Objections**

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on June 14, 2021.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
The Honorable Joan A. Lenard
All counsel of record

28