UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:14-CV-23208-LENARD/GOODMAN

FLAVA WORKS, INC.,

    Plaintiff,

v.

A4A RESEAU, INC., A4A NETWORK, INC.,
and MARC PARENT,

    Defendants.
_____/

# REPORT AND RECOMMENDATIONS ON
# DEFENDANTS' MOTION FOR ATTORNEY'S FEES

In this copyright infringement case, Defendants A4A RESEAU, INC., A4A NETWORK, INC., and MARC PARENT ("Defendants") move to recover attorney's fees from Plaintiff FLAVA WORKS, INC. ("Plaintiff") for, among other things, expenses incurred as a result of Plaintiff's Voluntary Petition for Chapter 11 Bankruptcy (the "Bankruptcy Action"). [ECF No. 230]. United States District Judge Joan A. Lenard referred this motion to the Undersigned. [ECF No. 231]. Plaintiff filed a response [ECF No. 232], and Defendants filed a reply. [ECF No. 234].

For the reasons outlined below, the Undersigned respectfully recommends the District Court **grant in part** and **deny in part** Defendants' motion.

I.  **Background**

Plaintiff commenced this action on August 29, 2014. [ECF No. 1]. After Defendants filed a Motion to Dismiss [ECF No. 11] and an Answer [ECF No. 20], Plaintiff filed a Notice of Voluntary Dismissal Without Prejudice. [ECF No. 22]. On January 20, 2015, this Court entered an Order dismissing the case without prejudice. [ECF No. 23][1]. In March of that same year, the Court entered an Order awarding Defendants attorneys' fees pursuant to Rule 41(d)[2]. [ECF No. 28].

Defendants filed a motion requesting attorneys' fees, which the Court granted on April 7, 2015. [ECF No. 49]. The Court ordered Plaintiff to pay Defendants $28,060.57 in attorneys' fees, and on June 10, 2015, the Clerk issued a Writ of Execution in that amount. [ECF No. 50]. Plaintiff completed the $28,060.57 payment on February 21, 2017. [ECF No. 167].

---

[1]  This same day, Plaintiff filed a parallel lawsuit against the same Defendants in the United States District Court for the Northern District of Illinois in Case No. 15-CV-00610. The case was transferred to the Southern District of Florida under case number 1:15-cv-21592. On August, 31, 2015, United States District Judge Marcia G. Cooke entered an order staying the case pending resolution of the instant case. [ECF No. 63].

[2]  Pursuant to Rule 41(a)(1)(A), a plaintiff may dismiss an action without a court order by filing "(i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have appeared." The Court dismissed the case pursuant to Rule 41(a)(2) which states, "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."

On March 28, 2017, Defendants filed another motion for attorneys' fees and costs incurred in executing the Court's previous Order on attorney's fees. [ECF No. 137]. On September 20, 2018, the Court entered a judgment for $81,958.72 in attorney's fees, costs, and post-judgment interest against Plaintiff. [ECF No. 167]. This Order calculated the post-judgment interest from March 5, 2015 (the date the Court entered the Order awarding Defendants attorneys' fees) until February 21, 2017 (the date the initial award was paid in full). Plaintiff appealed the Court's September 20, 2018 Order. However, Plaintiff's appeal was dismissed due to its failure to adhere to rules related to retaining counsel and filing certain forms with the Court. [ECF Nos. 170, 186]. On December 7, 2018, the Clerk issued a Writ of Execution in the amount of $81,958.72. [ECF No. 173].

Due to Plaintiff's delay in payment, Defendants filed motions for the order of sale and seizure of Plaintiff's intellectual property. [ECF Nos. 191, 203]. On July 15, 2021, this Court issued an Order granting Defendants' Amended Motion for Seizure and Sale, allowing the seizure of some of Plaintiff's intellectual property in an attempt to satisfy the post-judgment attorney's fees and costs. [ECF No. 218].

In her Order, Judge Lenard held that Defendants "shall have and receive from [Plaintiff] Flava Works, Inc. attorneys' fees and costs incurred in connection with executing [ ] their Final Judgment pursuant to Sections 57.11 and 59.29(8), Florida Statutes, in an amount yet to be determined." *Id*.

3

Four days later, on July 19, 2021, Plaintiff filed its Bankruptcy Action in the United States Bankruptcy Court in the Northern District of Illinois, Eastern Division. [ECF No. 232-1]. Defendant A4A Reseau, Inc. participated in the Bankruptcy Action as a creditor. The Bankruptcy Action was later dismissed on August 2, 2022 based on the parties' joint belief that a payment arrangement could be made. [ECF No. 230-1]. Prior to the dismissal, on July 14, 2022, Plaintiff paid Defendants $81,958.72, the judgment amount specified in Judge Lenard's September 20, 2018 Order. [ECF Nos. 218, 230].

Defendants now move to recover *additional* attorneys' fees incurred since Judge Lenard's September 20, 2018 Order.

## II. Legal Standard

A. Attorney's Fees

Typically, under the "American Rule", "each party bears its own attorney's fees." *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1331 (11th Cir. 2002) (acknowledging "the general applicability of the American Rule regarding fee shifting, i.e., that each party bears its own attorneys' fees"); *Panama Shipping Lines, Inc. v. Ciramar Int'l Trading, Ltd.*, No. 08-21213-CIV, 2009 WL 812714, at *3 (S.D. Fla. Mar. 26, 2009) ("The American Rule stands for the proposition that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser."). Thus, "absent statute or enforceable contract,

4

litigants pay their own attorneys' fees." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975).

The party seeking attorney's fees bears the burden of establishing entitlement via statute or enforceable contract. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) ("[F]ee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." (quoting *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)). And "[b]ecause the right to attorney's fees must be found in a contract or statute, the specific text of the contractual or statutory provision granting the right is critical to determining an award of fees." *Cabrera v. Haims Motors, Inc.*, No. 17-CV-60500, 2018 WL 2455438, at *2 (S.D. Fla. June 1, 2018), report and recommendation adopted, No. 17-CIV-60500, 2018 WL 4409844 (S.D. Fla. June 19, 2018) (citing *Florida Medical Ctr. v. McCoy*, 657 So. 2d 1248, 1250 (Fla. 4th DCA 1995)).

Under Rule 69(a)(1), "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1). The specific statutory or contractual basis of a claim for attorney's fees need not be pleaded. *Caufield v. Cantele*, 837 So. 2d 371, 377-78 (Fla. 2002).

The relevant Florida statute, § 57.115 provides:

> (1) The court may award against a judgment debtor reasonable costs and attorney's fees incurred thereafter by a judgment creditor in connection with execution on a judgment.
> (2) In determining the amount of costs, including attorney's fees, if any, to be awarded under this section, the court shall consider:
>> (a) Whether the judgment debtor had attempted to avoid or evade the payment of the judgment; and
>> (b) Other factors as may be appropriate in determining the value of the services provided or the necessity for incurring costs in connection with the execution.

Fla. Stat. § 57.115.

An award of fees under Fla. Stat. § 57.115 is discretionary. *See Tower Cranes of Am, Inc. v. Monte Campbell Crane Co.*, 627 So. 2d 1350 (Fla. 4th DCA 1993).

### III. Analysis

#### A. Entitlement to Fees

This Court previously held that Defendants were entitled to attorneys' fees and costs under Fla. Stat. §§ 57.115 and 59.29(8) since their collection efforts, up and until July 15, 2021,[3] were directly connected to Defendants' execution of their judgment. [ECF No. 218]. However, this Court also importantly noted that a "direct connection" to a judgment's execution does *not* include efforts made in collateral proceedings, even though those proceedings may relate to the creditor's collection efforts on a judgment.

---

[3] "[U]p and until July 15, 2021" is the date Judge Lenard issued her Order finding Defendants were entitled to fees.

[ECF No. 148]. Defendants' motion asks this Court to award additional attorneys' fees against Plaintiff in the amount of $92,593.34. The $92,593.34 includes fees associated with the Bankruptcy Action. [ECF No. 230]. The fees sought span from September 20, 2018, the date Judge Lenard awarded the $81,958.72 judgment against Plaintiff, to August 9, 2022, the date Defendants filed their original Motion to Compel Seizure and Sale. *Id*.

Defendants' current request originated in their Motion to Compel Seizure and Sale. [ECF No. 221]. The Undersigned denied Defendants' request for fees there because the motion offered "**no authority** which would support this Court awarding attorneys' fees for fees incurred in an ancillary bankruptcy proceeding in another jurisdiction."[4] [ECF No. 228 (emphasis added)]. The Undersigned concluded the Order by instructing Defendants as to what their subsequent request for fees *must* include, "Defendants' attorneys' fees motion shall comply with the Local Rules and shall contain a memorandum of law **supporting all requested attorneys' fees**." *Id*. (emphasis added).

Defendants current motion fails to comply with the Undersigned's previous Order. Because Defendants' fee request involves fees related to the Bankruptcy Action, Defendants were tasked with showing the Court whether the attorneys' fees incurred as a result of the Bankruptcy Action were rendered in direct connection to Defendants'

---

[4] That fee request was also denied because Defendants failed to "meaningfully explain why their requested fees [were] reasonable and failed to offer any insight into the attached billing records." *Id*.

7

execution of their judgment, or if the Bankruptcy Action was a collateral proceeding for which an award of attorneys' fees cannot be recovered.

Not only does the current motion lack *any* supporting authority regarding fees incurred in ancillary bankruptcy proceedings, but it presents a disingenuous view of the procedural history to the Court. For example, Defendants state in their memorandum of law that the "Court has previously ruled that Defendants were entitled to the relief sought in this Motion."[5] [ECF No. 230 (citing ECF No. 218)]. But the Order Defendants rely on here was issued *before* the Bankruptcy Action. Therefore, Judge Lenard was neither aware of the Bankruptcy Action nor took it into consideration when she ruled that Defendants were entitled to attorneys' fees and costs. She only took into consideration Defendants' efforts to execute their final judgment *prior* to the Bankruptcy Action. Defendants' statement could be viewed as an attempt to cause the Court to incorrectly conclude that their full request was *already* granted and that it just needs to be enforced.

The Undersigned notes that Defendants' motion for additional attorney's fees described Plaintiff's bankruptcy case as one brought in bad faith. But the bankruptcy court never made such a finding. In fact, in its January 10, 2022 Order Denying in Part

---

[5] Defendants later state, "[a]s set forth above, this Court has already determined that [Defendants] [are] entitled to recover [their] attorneys' fees in pursuit of collecting this judgment." *Id*.

8

Motion to Dismiss Chapter 11 Case, the Bankruptcy Court held that an examination of Debtor's conduct reveals that "at least in this Court, the Debtor has not been dilatory and has not ignored the requirements which the Bankruptcy Code and Rules place upon it." [ECF No. 232-2, pp. 4-5]. Moreover, the Bankruptcy Court also concluded that it "is not convinced that A4A [Reseau, Inc.] has yet met its burden of establishing that the Debtor filed this case in bad faith, notwithstanding the Debtor's dilatory conduct in the Florida federal litigation." *Id*.

Plaintiff's response to Defendants' motion does not dispute Defendants' request for attorneys' fees *before* the Bankruptcy Action. Failure to respond to an argument may result in waiver. *See Five for Ent. S.A. v. Rodriguez*, No. 11-24142-CIV, 2013 WL 4433420, at *14 (S.D. Fla. Aug. 15, 2013) ("A failure to address issues in response to a motion is grounds for finding that the claims have been abandoned."); *Altare v. Vertical Reality MFG, Inc.*, No. 19-CV-21496, 2020 WL 209272, at *2 (S.D. Fla. Jan. 14, 2020) ("Plaintiff did not respond to this argument and, consequently, the Court deems any response waived."). Plaintiff's only request is that the awarded fees not include the costs associated with Illinois and the Bankruptcy Action. [ECF No. 232].

The Undersigned **respectfully recommends** that Defendants' motion be **denied in part** as to their request for fees related to the Bankruptcy Action because of their failure to include any legal authority supporting their entitlement to fees incurred in ancillary bankruptcy proceedings.

As for the remainder of Defendants' fee request, the Undersigned agrees with Defendants and **respectfully recommends** that their motion be **granted in part** as to their request for fees *unrelated* to the Bankruptcy Action from September 20, 2018 until August 9, 2022.

### B. Reasonableness of Fees

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 434. As already noted, this amount is typically referred to as the "lodestar." *Thornton v. Wolpoff & Abramson, L.L.P.*, 312 F. App'x 161, 163-64 (11th Cir. 2008).

The resulting fee carries a presumption that it is reasonable. *Blum v. Stenson*, 465 U.S. 886, 897 (1984). The applicant bears the burden of documenting the reasonableness of the hours expended and the hourly rate. *Barnes*, 168 F.3d at 427.

Hours are unreasonable if they are "excessive, redundant or otherwise unnecessary." *Norman*, 836 F.2d at 1301 (quoting *Hensley*, 461 U.S. at 434). In other words, the Court must omit those hours which would be unreasonable to bill a client "irrespective of the skill, reputation, or experience of counsel." *Id.*

Defendants request $92,593.24 in attorneys' fees. The fees are associated with the following timekeepers: John Bradley (seeking $425 an hour); Caysee Kamaentsky (seeking $100 an hour, as a law clerk); George V. Desh (seeking $300 an hour); Kim Barta

(seeking $100-$150 an hour, as a paralegal);[6] John Fitzpatrick (seeking $400 an hour); Tammy Miller (seeking $150 an hour, as a paralegal); and Bruce Menkes (seeking $450 an hour).

The Undersigned will consider only the fees associated with John Bradley and Caysee Kamaentsky because the other timekeepers are exclusively associated with the Bankruptcy Action.

Plaintiff did not object to the hourly rates charged by John Bradley and Caysee Kamaentsky, nor did it submit an affidavit giving its firm's hourly rates. *See* S.D. Fla. L.R. 7.3(a) ("If a party objects to an hourly rate, its counsel must submit an affidavit giving its firm's hourly rates for the matter[.]"). Judge Lenard previously held that Mr. Bradley's rate was reasonable based on his skill and experience. [ECF No. 167]. The Undersigned additionally finds Caysee Kamaentsky's rate to be reasonable in light of awards in similar cases, the experience involved, and the skill required to perform the work in this type of case.

After a careful review of Defendants' Exhibit B, the Undersigned calculated a total of 145.3 hours attributable to John Bradley and 31.74 hours attributable to Caysee Kamaentsky.[7] The Undersigned determined that 61.4 of John Bradley's 145.3 hours are

---

[6] Kim Barta originally billed at $100 an hour, but this rate increased to $150 during the course of the case. [ECF No. 230-C].

[7] Defendants' total number of hours is different than the Undersigned's calculation and review of Exhibit B. Defendants state John Bradley spent 129.6 hours (before the

11

either related to the Bankruptcy Action or outside the scope of the relevant time period, September 20, 2018 to August 9, 2022. Likewise, 0.17 of Caysee Kamaentsky's 31.74 hours are related to the Bankruptcy Action. After subtracting the amount of hours outside the scope or related to the Bankruptcy Action, the amount of hours per time keeper is 83.9 (John Bradley) and 31.57 (Caysee Kamaentsky) -- totaling 115.47 hours.

Defendants' motion includes multiple entries that this Court deems unreasonable.[8] These problematic entries are related to block billing.

Below are two examples of block billing from Defendants' Exhibit B:

| Date | Description | Hours | Rate | Initials | Total |
|---|---|---|---|---|---|
| 11/01/2018 | Draft memo to Caysee regarding appeal research; draft second email regarding Motion to Seize Assets; draft email to Caysee and Betty regarding last Execution and need for revisions; review and revise memo on appeal research; draft and revise changes to Motion For Proceeding Supplementary; draft letter to Vincent on status; draft Notice of Appeal in 11th Circuit Case | 1.30 | $425.00 | JB | $552.50 |
| 11/02/2018 | Draft revisions to memo to Caysee on appeal issues; review and revise Notice of Appeal Filing; receive and review Writ of Execution; final and approve letter to Vincent with Notice of Appeal; receive and review email response from Vincent; emails with Betty regarding Motions to Cease on copyrights; emails with Caysee regarding appeal right on the attorney's fee order; numerous responses and replies; telephone conference with Vincent; follow up emails | 2.00 | $425.00 | JB | $850.00 |

[ECF No. 230 (Exhibit B)].

---

Bankruptcy Action and until the filing of the Motion to Compel Seizure and Sale) and that Caysee Kamaentsky spent 33.27 hours (prior to the Bankruptcy Action). [ECF 230 (Exhibit B)].

[8]  Defendants' penchant for submitting entries which are impossible or extremely difficult to evaluate spilled over into the Bankruptcy Action. For example, Defendants submitted a "reimbursable expense" of $2,981 for an invoice dated September 28, 2021. [ECF No. 230-2]. The invoice was not attached in the same exhibit but, even if it was, Defendants needed to include some level of detail in the description, so that the Court has a general idea of the nature of the expense. Otherwise, a movant could simply dump a hundred pages of invoices into the record as exhibits, with the implicit message that the judge should personally review each invoice to determine the nature of the expense.

"'Block billing' occurs when an attorney lists all of the day's tasks on a case in a single entry and does not separate the tasks and the time spent working on those individual tasks as separate entries on billing records." *Plumbers & Pipefitters Union No. 421 Health & Welfare Fund v. Brian Trematore Plumbing & Heating, Inc.*, No. 5:11-CV-221, 2013 WL 3816660, at *4 (M.D. Ga. July 22, 2013). The practice of block billing is disfavored because it prevents the Court from accurately ascertaining the amount of time spent on each discrete task. *See Lil' Joe Wein Music, Inc. v. Jackson*, No. 06-20079-CIV, 2008 WL 2688117, at *11 (S.D. Fla. July 1, 2008) (noting that block billing "makes it difficult to establish whether the amount of time spent on any one task was reasonable"). Nonetheless, "[a]s a general proposition block billing is not prohibited so long as the Court can determine from the time entry the services that were performed." *Home Design Servs., Inc. v. Turner Heritage Homes, Inc.*, No. 4:08-CV-355-MCR-GRJ, 2018 WL 4381294, at *6 (N.D. Fla. May 29, 2018), report and recommendation adopted, No. 4:08CV355/MCR/GRJ, 2018 WL 6829047 (N.D. Fla. Sept. 28, 2018).

In the instant case, some (but not all) of the block billed entries should be reduced because there is no way to determine the amount of time counsel spent on each of the specific tasks mentioned in the block-billed entry.

Due to the unreasonableness of some of the time entries, the Undersigned respectfully recommends that the Court apply a thirty (30) percent reduction to the

amount of fees requested, resulting in a total discount of $11,644.35,[9] which results in a net fees award of $27,170.15.[10]

## IV.   Conclusion

For the reasons discussed above the Undersigned **respectfully recommends** that the District Court **grant in part** and **deny in part** Defendants' motion for attorneys' fees and award them $27,170.15 in fees ($11,644.35 less than the full amount).

## V.   Objections

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and

---

[9]   The Undersigned first calculated the 30% discount: 30% of 31.57 = 9.471; 30% of 83.9=25.17. Second, the Undersigned used the 30% and subtracted it from the total amount of hours: 31.57-9.471 = 22.099; 83.9-25.17 = 58.73. Third, the 30% was multiplied by the hourly rate sought and then added together to determine the total discount: 9.471 x 100 = $947.1; 25.17 x 425 = $10,697.25; $10,697.25 + $947.1 = $11,644.35.

[10]   The Undersigned multiplied the hourly rate with the remaining amount (after the 30% was removed): (1) John Bradley-$425 x 58.73= $24,960.25; (2) Caysee Kamaentsky-$100 x 22.099 = $2,209.90. Adding both together results in a total of $27,170.15.

shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, at Miami, Florida, on August 8, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Joan A. Lenard
All Counsel of Record